UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL B. WHITE,

        Appellant,                                                              Case No. 1:22-cv-10989

v.                                                                                      Honorable Thomas L. Ludington
                                                                                                                                                                           United States District Judge
DONALD KNAPP, JR., et. al.,

        Appellee.
_____/

**OPINION AND ORDER AFFIRMING BANKRUPTCY COURT**

        A decade ago, Appellee Collene Corcoran, serving as Chapter 7 Trustee, sold Appellant Michael White's property at 11085 Block Road, Birch Run, Michigan ("Block Road Property") to Appellees Donald and Koral Knapp because of White's Chapter 7 bankruptcy proceedings. White's effort to overturn that sale in 2016 proved unsuccessful. But he now asserts that he nonetheless retained interests in the property—specifically, in a perennial pasture crop, hay crop, fencing, and fish in a pond.

        In 2018, White sued the Knapps in state court to vindicate those asserted interests. Both the state trial court and the court of appeals rejected his claims. White then returned to the bankruptcy court and filed an adversary proceeding against Appellee Corcoran, the Knapps, and the Knapps' attorneys in the state case, again largely predicated on those asserted interests. Appellee Corcoran moved to dismiss, as did the remaining Appellees. The bankruptcy court granted the motions, ruling that White lacked standing to sue Corcoran and that the doctrines of *res judicata* and *Rooker–Feldman* foreclosed his claims against the others.

        White appealed to this Court. For the reasons that follow, the bankruptcy court's dismissal of the adversary proceeding will be affirmed.

I.

A.

In 1990, Plaintiff Michael White and his wife, Darla White, purchased property at 11085 Block Road, Birch Run, Michigan (the "Block Road Property"). ECF No. 6 at PageID.137. They financed the purchase with a loan. *See id.* In 2006, the Whites paid off the loan. *Id.* But in 2007, they reencumbered the Block Road Property: the Whites secured a $100,000 line of credit from Frankenmuth Credit Union (FCU), secured by a mortgage against the Block Road Property. *Id.*

Shortly after they opened their FCU account, the Whites exhausted the full $100,000 of credit. *Id.* The Whites then fell behind on their payments to FCU in 2010 and eventually stopped making payments altogether. *Id.* The following year, FCU initiated a foreclosure action in the Saginaw County Circuit Court. *Id.* Ultimately, the court entered a judgment of foreclosure in favor of FCU and authorized FCU to conduct a foreclosure sale of the Block Road Property. *Id.*

In 2013, the Whites filed for bankruptcy under Chapter 11 of the Bankruptcy Code, automatically staying the foreclosure sale. *Id.* at PageID.138. After filing for bankruptcy, the Whites submitted their first set of asset exemptions under 11 U.S.C. § 552 on July 30, 2013. *Id.* at PageID.79. The 2013 exemptions listed hay with a value of less than $500 and three horses valued at $150 each. *Id.*

In 2014, the United States Trustee moved to either dismiss Whites' case or convert it to a Chapter 7 bankruptcy proceeding. *Id.* at PageID.139. The Bankruptcy Court then converted the case to a Chapter 7 bankruptcy. *Id.* After that, on June 4, 2014, the Whites amended their exemptions. *Id.* at PageID.79. The 2014 exemptions listed hay valued at $400 and "pets and farm animals" valued at $1,000. *Id.*

**B.**

On August 22, 2014, Collene Corcoran was appointed as the Chapter 7 Trustee of the Whites' bankruptcy estate. *Id.* at PageID.80. Corcoran sold the Block Road Property through an online auction to Appellees Donald and Koral Knapp. *Id.* The bankruptcy court approved the sale of the Block Road Property on March 16, 2015, and confirmed the sale on June 25, 2015. *See id.* at PageID.65, 134. The Trustee's Deed was transferred on August 5, 2015. *Id.* at PageID.148.

On January 14, 2016—after the Trustee sold the Block Road Property to the Knapps—Mr. White amended his exemptions again.[1] *Id.* at PageID.79. This time, White listed "fish in [an] aquarium," "hay in [a] barn on July 30, 2013," farm animals consisting of "3 gelding horses, dog, barn cats, and chickens," and—for the first time—approximately "20 acres of perennial hay and pasture crop located at" the Block Road Property. *Id.* The bankruptcy court held that White was entitled to certain exemptions, "but not as to the hay." *Id.* at PageID.151; *see also id.* at PageID.160. Moreover, the bankruptcy court further found that any valid homestead exemption for the Block Road Property was "illusory" because "based [on] the sale of the [property] there was no equity in the property." *Id.* at PageID.150. And the court later denied White's requested exemptions for "hay, crops, and pasture." *Id.* at PageID.160.

White then appealed the bankruptcy court's June 25, 2015, order confirming the sale of the Block Road Property. *Id.* at PageID.175. On March 10, 2016, this Court dismissed the appeal as moot because the Knapps were good-faith purchasers of the Block Road Property, and the Whites did not timely seek a "stay of the property sale by posting the appropriate cash bond." *In re White*, No. 15-CV-12354, 2016 WL 1105261, at *4 (E.D. Mich. Mar. 10, 2016). White appealed to the

---

[1] At this point, Darla White had passed away. *See In re White*, 535 B.R. 749, 752, n.1 (E.D. Mich. 2015).

Sixth Circuit, which affirmed this Court's decision on March 31, 2017. *In re White*, No. 16-1426, 2017 WL 4804418, at *2 (6th Cir. Mar. 31, 2017). The United States Supreme Court then denied White's petition for certiorari on January 8, 2018. *White v. Corcoran*, 583 U.S. 1056 (2018).

### C.

But Mr. White persisted. On July 27, 2018, White sued the Knapps in the Saginaw County Circuit Court. *Id.* at PageID.159. White claimed that he had property rights to "a perennial pasture crop, a perennial hay crop, fencing around the crop areas, and fish in a pond on the Block Road Property." *Id*. White alleged that he retained a legal interest in the property based on the exemptions he claimed during his bankruptcy proceedings. *Id.* The Saginaw County Circuit Court granted summary disposition in favor of the Knapps. *Id.*

White then appealed to the Michigan Court of Appeals. On April 23, 2020, the Michigan Court of Appeals affirmed the Saginaw County Circuit Court's decision, concluding that White possessed no property interest in the claimed crops, fencing, and fish. *Id.* at PageID.160. In so doing, the court cited the bankruptcy court's order denying Mr. White's exemption request for hay, crops, and pasture on the Block Road Property. *Id.* White then applied for leave to appeal to the Michigan Supreme Court, which denied his application on December 22, 2020. *Id.* at PageID.162. After that, White petitioned for certiorari in the United States Supreme Court, which denied his petition. *White v. Knapp*, 141 S. Ct. 2670 (2021).

### D.

Mr. White persisted again. To that end, White launched adversary proceedings in the bankruptcy court on May 3, 2021. ECF No. 1 at PageID.7, 16. This time, White sued the Knapps, their attorneys, and their law firm, Smith Bovill, P.C. (collectively, the "Knapp Appellees"). *Id.* at PageID.7. He also sued Collene Corcoran in her capacities as attorney, individual, and Chapter 7

Trustee. *Id.* at 8. White advanced 24 claims, grounded largely in his assertion that he held interests in a fence and related "fence items," the "profits á prendre for fish in the pond," and "20 acres of perennial pasture and perennial hay crop" on the Block Road Property. ECF No. 6 at PageID.56–57; *see also White v. Knapp*, No. 21-2011 (Bankr. E.D. Mich.), ECF No. 1. Any other claims seemingly trace back to Corcoran's alleged failure to discharge her duties as trustee and to honor White's asserted bankruptcy exemptions in selling the Block Road Property. ECF No. 6 at PageID.57; *see also White v. Knapp*, No. 21-2011 (Bankr. E.D. Mich.), ECF No. 1. Both the Knapp Appellees and Corcoran moved to dismiss the adversary proceeding. *See* ECF Nos. 6 at PageID.78; 1 at PageID.7.

On February 11, 2022, the bankruptcy court granted the Knapp Appellees' motion to dismiss. Ultimately, the court concluded that preclusion and *Rooker-Feldman* doctrines barred White's claims against them. ECF No. 6 at PageID.60. The court reasoned that the "state court action was decided on the merits by dismissal of Mr. White's complaint in its entirety," and his claims "were or should have been raised in the state court action and were addressed by the Michigan Courts." *Id.* at PageID.59–60. In other words, the court observed that "Mr. White's claims in this Adversary Proceeding are either directly based on his state court claims or so 'inextricably intertwined' with such." *Id.* at PageID.61.

That same day, the bankruptcy court granted Corcoran's motion to dismiss. In so doing, the court observed that "[a] debtor has no injury to object to the sale of property of the estate by a trustee, if the debtor is granted his allowed exemption under applicable law." ECF No. 1 at PageID.19. Thus, the court concluded that White lacked standing to sue Corcoran. *Id.* White appealed to this Court.

## II.

The district court acts as an appellate court when reviewing the final decisions of the Bankruptcy Court. 28 U.S.C. § 158. District courts apply "the clearly erroneous standard of review" to the Bankruptcy Court's factual findings and review *de novo* the bankruptcy court's legal conclusions. *In re Gardner*, 360 F.3d 551, 557 (6th Cir. 2004) (emphasis in original). When a bankruptcy court's conclusion involves a blended question of fact and law, each part will be considered separately and reviewed under the appropriate standard. *Official Comm. of Unsecured Creditors v. Qwest Communs. Corp. (In re A.P. Liquidating Co.)*, 350 B.R. 752 (Bankr. E.D. Mich. 2006) (quoting *WesBanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs.),* 106 F.3d 1259 (6th Cir. 1997).

## III.

White's argument on appeal is two-fold. First, White argues that the bankruptcy court erred in concluding that he lacked standing to sue Appellee Corcoran. *See* ECF No. 9 at PageID.258. Second, he argues that the bankruptcy court erred in concluding his claims against the remaining Appellees are barred by the *Rooker-Feldman* doctrine and preclusion doctrines. *See id.* at PageID.282–85. Each argument is addressed in turn below.

### A.

Starting with standing, the bankruptcy court correctly concluded that White lacked standing to bring the adversary proceeding against Appellee Corcoran, the Chapter 7 Trustee of White's administratively insolvent estate. To establish standing for an adversary proceeding, a debtor must establish three elements: (1) they suffered an injury-in-fact, (2) there is a causal connection between the injury and the challenged conduct, and (3) the injury is likely to be redressed by a favorable decision from the court. *In re Cormier*, 382 B.R. 377, 410 (Bankr. W.D.

Mich. 2008). In bankruptcy, standing turns on a pecuniary interest in the outcome. *Id.*; *see also In re Khan*, 544 F. App'x 617, 619 (6th Cir. 2013). Ordinarily, Chapter 7 debtors lack such an interest when suing their bankruptcy estate's trustee, unless the bankruptcy estate is likely to generate a surplus—a rare occurrence. *In re Cormier*, 382 B.R. at 410. Only if the estate pays all expenses and creditors in full does any surplus flow back to the debtor. *See id.*

Here, White cannot meet that standard. His estate was insolvent, with debts exceeding the value of its property. ECF No. 6 at PageID.82, 123. Not to mention, the secured lender—FCU—accepted less than it was owed to permit the sale of the Block Road Property. *Id.* To the extent White claims to have retained property through exemptions, the bankruptcy court denied exemptions for much of the property he now asserts.[2] *Id.* at PageID.160. Further, any property interests he once held in the Block Road Property were extinguished when the property was sold in 2015, with the sale order transferring "all improvements and appurtenances" to the Knapps. *Id.* at PageID.161. And nothing in the record supports that White later acquired profit á prendre rights in crops, fencing, or fish. Nor may White relitigate the validity of the Block Road Property sale, *see* ECF No. 9 at PageID.255–58, 281, which he has already challenged and exhausted his appeals. *See supra* Section I, B. All said, absent an interest or exemption in the underlying property, White cannot demonstrate a pecuniary injury capable of redress in an adversary proceeding against Appellee Corcoran for the sale of the Block Road Property.

In sum, White does not have standing to initiate an adversary proceeding against Appellee Corcoran that challenges how she executed her duties as trustee of his bankruptcy estate when

---

[2] This lack of surplus equity also supports the bankruptcy court's finding that White's homestead exemption for Block Road Property under 11 U.S.C. § 522(d) was "illusory." *See In re Brown*, 851 F.3d 619 (6th Cir. 2017).

selling the Block Road Property. As a result, the bankruptcy court did not err in granting Appellee Corcoran's motion to dismiss for lack of standing.

**B.**

Moving to the *Rooker-Feldman* doctrine, the bankruptcy court did not err in concluding that White's claims against the Knapp Appellees are barred by the *Rooker-Feldman* doctrine and preclusion doctrines.

**Rooker-Feldman.** Beginning with *Rooker-Feldman*, the doctrine stems from a negative inference buried in 28 U.S.C. § 1257. *RLR Invs., LLC v. City of Pigeon Forge, Tennessee*, 4 F.4th 380, 385 (6th Cir. 2021). That statute vests *only* the United States Supreme Court with appellate jurisdiction to review state court judgments. 28 U.S.C. § 1257. From that premise follows the rule: lower federal courts have no authority to sit in direct review of state-court decisions. *Lance v. Dennis*, 546 U.S. 459, 463 (2006).

The doctrine takes its name from two cases, unsurprisingly called *Rooker* and *Feldman*. In *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), dissatisfied litigants sought to overturn an Indiana judgment on federal constitutional grounds. But the federal district court concluded it did not have subject matter jurisdiction to consider the appellant's claims, and the Supreme Court affirmed on direct appeal. *Id.* The Supreme Court held that such review belonged to the state courts in the first instance and, if error existed, to the Supreme Court on direct appeal. *Id.* at 415. Put differently, a state-court judgment, however wrong, is not void—it is binding unless overturned on appeal by the state appellate courts or the Supreme Court. *Id.*

Sixty years after *Rooker*, the Supreme Court decided *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). The two *Feldman* plaintiffs petitioned the District of Columbia Court of Appeals to waive a rule that required D.C. bar applicants to have graduated from an ABA-approved law

school. *Id.* at 465–68, 470–72. After the state court denied their petitions, the two turned to federal court, arguing that the D.C. court's denial violated the Fifth Amendment. *Id.* at 468, 472. The federal district court dismissed the federal complaints, concluding it lacked subject matter jurisdiction. *Id.* at 469, 473. But the District of Columbia Circuit reversed, concluding the state court's bar association waiver procedures were not "judicial" and thus "did not foreclose litigation of the [plaintiff's] constitutional contentions" in federal court. *Id.* at 474. The Supreme Court reversed again on appeal, concluding the D.C. state court acted "judicially" throughout the waiver proceedings. *Id.* at 482. The Court distinguished between federal review of the constitutionality of the D.C. bar association's *rule* about accredited law graduates, on one hand, and reviewing the D.C. courts' *application* of that rule in particular cases, on the other. Although the former is permissible, lower federal courts lack jurisdiction to consider the latter under § 1257. *Id.* at 486.

*Rooker* and *Feldman* are "the easy cases" and "outline the basic rule" that "appeals from state courts of last resort go only to the Supreme Court." *RLR*, 4 F.4th at 385. But lower courts across the country and the Sixth Circuit "expanded" this rule in "harder cases" by relying on *Feldman*'s principle that they "possess no power whatever to sit in direct review of state court decisions," 460 U.S. at 482, n. 16. *RLR*, 4 F.4th at 385 (collecting cases). But this expansion lacked uniformity. Although courts agreed *Rooker-Feldman* "prevented a 'de facto appeal from a state court judgment' in federal court," courts could not agree on what constitutes this "'forbidden de facto appeal.'" *Id.* (quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004)); *see also Feldman*, 460 U.S. at 482, n. 16 (noting *Rooker-Feldman* doctrine bars relitigation of claims raised in state court proceedings as well as those that are "inextricably intertwined" with claims asserted there).

The Supreme Court later clarified that *Rooker-Feldman* does not apply in concurrently litigated, parallel state and federal proceedings. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005). In cases involving "properly invoked concurrent jurisdiction," federal jurisdiction does not "vanish[]" when the state court "reaches judgment on the same or related question[.]" *Id.* Instead, the Supreme Court held that the *Rooker-Feldman* doctrine is "confined to cases" where four conditions are met: (1) the federal case's plaintiffs are "state-court losers"; (2) the plaintiffs complain "of injuries caused by state-court judgments"; (3) the state judgment was "rendered *before* the" federal "proceedings commenced"; and (4) the federal proceeding invites "review and rejection of those judgments." *Id.* at 284 (emphasis added). The Sixth Circuit recently clarified that these four prongs provide the "starting point" of any *Rooker-Feldman* analysis, and that the "key words are 'review' and 'judgment.'" *RLR*, 4 F.4th at 387 (citing *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 406 (Sutton, J., concurring)). Here, all four *Rooker-Feldman* elements are satisfied.

First, White lost in state court. White pressed his claim to retained interests in the Block Road Property in state court. The trial court granted the Knapps' motion for summary disposition on the merits.[3] ECF No. 6 at PageID.159. The Michigan Court of Appeals affirmed. *Id.* at PageID.161. And the Michigan Supreme Court denied leave to appeal. *Id.* at PageID.162. That judgment brought White's search for "retained property interests" to an end.

---

[3] White repeatedly asserts that the state court did not reach the merits of his property claims because it dismissed his case solely on jurisdictional grounds. *See, e.g.*, ECF Nos. 9 at PageID.283; 15 at PageID.376–77. Not true. The state court expressly addressed the merits of his claims when it granted summary disposition under MICH. CT. R. 2.116(C)(10). *See White v. Knapp*, No. 21-2011 (Bankr. E.D. Mich.), ECF No. 40-1 at 6. And so did the Michigan Court of Appeals. *See* ECF No. 6 at PageID.159–61.

Second, the state court order was a judgment. For *Rooker-Feldman* purposes, "the Supreme Court has defined 'judgment' under § 1257 to be an 'investigation, declaration, and enforcement of liabilities as they stood on present or past facts and under laws supposed already to exist.'" *RLR*, 4 F.4th at 389 (quoting *Feldman*, 460 U.S. at 479) (cleaned up). On-the-merits determinations plainly classify as "judgments," while "ministerial actions" do not. *Id.* And the state court order here—later affirmed by the Michigan Court of Appeals—dismissed White's claims on the merits, concluding that he had failed to provide any evidence or rational argument that supported his claims. *See* ECF No. 6 at PageID.159–61.

Third, the state court order was issued before the adversary proceeding commenced. The state court appeals process concluded with the Michigan Supreme Court's denial of White's application for leave to appeal on December 22, 2020. *Id.* at PageID.162. Yet White filed this adversary proceeding on May 3, 2021. *Id.* at PageID.55.

White resists the conclusion that the state court order was issued before this case commenced. He argues that because the adversary proceeding was tied to his bankruptcy case, filed in July 2013, the federal action came before the state judgment. *See* ECF No. 15 at PageID.377. Not so. An adversary proceeding is a *separate* lawsuit, commenced by complaint, within the broader bankruptcy case. FED. R. BANKR. P. 7001, 7003; *In re Johnston*, 484 B.R. 706 (Bankr. S.D. Ohio 2012). As a result, for *Rooker–Feldman* purposes, the filing date of the adversary proceeding controls, not the date of the underlying bankruptcy petition. *See In re Rugiero*, 502 F. App'x 436, 438 (6th Cir. 2012) ("The Rooker–Feldman doctrine applies . . . when the state court loser files" new "claims filed in "federal court *after* the state court adversely rules." (emphasis in original)); *see also In re Manjarrez*, No. 24-11827, 2025 WL 2347788, at *2 (Bankr. S.D.N.Y. Aug. 13, 2025) (focusing on the date of the adversary proceeding when applying *Rooker-*

*Feldman* and finding that the plaintiff's claims were barred because the state court judgment was issued "long before [the] adversary proceeding was filed"). Mr. White's argument that the federal action preceded the state-court judgment is thus flawed.

White next argues that because the Supreme Court denied certiorari on May 24, 2022, the state proceedings were ongoing when he filed his adversary proceeding on May 3, 2021. ECF No. 15 at PageID.377. But this argument misses the mark, too. The state process ended in December 2020, when the Michigan Supreme Court denied leave to appeal. ECF No. 6 at PageID.162. At that point, only the United States Supreme Court could review the state-court judgment under 28 U.S.C. § 1257. As noted, the adversary proceeding, filed in May 2021, came after December 2020. And in any event, *Rooker–Feldman* applies even where the state appellate process remains open, so long as a lower state court has already issued a judgment on the claims at issue. *See RLR*, 4 F.4th at 393.

Fourth, and finally, White's adversary proceeding invites review and rejection of the state court's decision. In state court, White sought exemptions for hay, crops, and pasture at the Block Road Property. ECF No. 6 at PageID.161. In bankruptcy court, he sought the same relief: return of the fence and "fence items," twenty acres of hay and pasture, and rights to fish in the pond. To grant that relief, then, the bankruptcy court would have had to reach the opposite conclusion of the state court, using the same facts. So White's claimed injury stems directly from the state judgment. *RLR*, 4 F.4th at 394.

**Claim Preclusion.** Turning to preclusion—namely, *res judicata*. Federal courts must give state-court judgments the same preclusive effect they would receive under the law of the state that rendered them. *Exec. Arts Studio v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004). Michigan courts apply *res judicata* where (1) the prior action was decided on the merits, (2) the

- 12 -

actions involve the same parties or their privies, and (3) the matter in the second suit was, or could have been, resolved in the first. *Adair v. State*, 680 N.W.2d 386, 396 (Mich. 2004) (citing *Sewell v. Clean Cut Mgmt., Inc.*, 621 N.W.2d 222, 225 (Mich. 2001)). Michigan courts apply this doctrine broadly. *AuSable River Trading Post, LLC v. Dovetail Sols., Inc.*, 874 F.3d 271, 274 (6th Cir. 2017). To that end, in Michigan, *res judicata* bars not only claims already litigated, but also those arising from the same transaction that a party, with reasonable diligence, could have raised. *Adair* 680 N.W.2d at 396 (citing *Dart v. Dart*, 597 N.W.2d 82 (Mich. 1999)).

Here, even if any of White's claims were to escape the reach of *Rooker-Feldman*, they are foreclosed by *res judicata*. First, the state court case resolving the dispute over White's property interests was decided on the merits. *See supra* n.3. Second, it involved the same parties and their privies: Mr. White and the Knapp Appellees. *See* ECF No. 6 at PageID.159–61. Third, all the claims White brings here were litigated, or could have been litigated, in the state case. Indeed, White's claims against the Knapp Appellees arise from his asserted property interest in a fence and related "fence items," the "profits á prendre for fish in the pond," and "20 acres of perennial pasture and perennial hay crop"—the very interests litigated through White's state court claims. *Compare White v. Knapp*, No. 21-2011 (Bankr. E.D. Mich.), ECF No. 1, *with* ECF No. 6 at PageID.159–61.

In sum, the *Rooker-Feldman* doctrine and *res judicata* bar White's claims against Knapp Appellees. So the bankruptcy court did not err in dismissing those claims. As a result, the bankruptcy court did not err on either of the issues White appeals. Accordingly, the bankruptcy court's dismissal of White's adversary proceeding will be affirmed.

## IV.

Accordingly, it is **ORDERED** that the Bankruptcy Court's dismissal of the adversary proceeding, *White v. Knapp,* No. 21-2011 (Bankr. E.D. Mich.), is **AFFIRMED.**

**This is a final order and closes this case.**

Dated: September 16, 2025                              s/Thomas L. Ludington
                                                                                 THOMAS L. LUDINGTON
                                                                                 United States District Judge